May it please the Court, I'm Robert Gibbs for Mr. Singh. The issue before the Court is the Board's denial of a motion to reopen and a motion to reconsider, both on timeliness grounds. Mr. Singh, the Board in those cases refused to consider their equitable tolling powers to accept those motions, and did not consider the declarations of counsel and the client concerning the dates that they received the Board's decision dated 12-23 of 2003. For that reason, it seems to me fairly straightforward that under the Dalip Singh case, this matter should be referred back, remanded back to the Board to require them to consider those declarations and determine whether, in fact, the December 23 decision was, in fact, mailed to Mr. Bakri, the counsel of record at the time, under due process requirements and more as required of the Board than they did here. In a recent case, Jones v. Flowers, a Supreme Court case, a notice case, due process, the case involved a notice of property tax delinquency. And the notice went out, and it came back unclaimed. And the Board or, excuse me, the Supreme Court there found that where it appeared where the entity had evidence that the document hadn't been received, they had to do more as a matter of due process, some alternative method to make sure that notice was done. Well, how does that affect this case? In this case, remember, the decision of the Board was December 23, 2003. On January 2nd, the Petitioner, Mr. Singh, signed a notice of change of address and sent it to the Board, as he's required to do under the law. It, according to the record in AR 261 and 262, it was received by the Board on the 12th of January, still within that 30-day time frame. Nothing happened at the Board with that notice until the 20th, when they looked at it and wrote out a form and mailed it on the 21st of January to him by first-class mail. He, of course, didn't receive it until the 23rd, which was after the 30 days had run. In my view, the Board had a duty to do more. When they got that address correction notice from the alien, that demonstrated to them strong reason to believe that he was unaware of and his counsel was unaware of the decision of December 23rd. If they had acted promptly, called counsel, faxed counsel a copy of the decision to make sure that it had gotten there, we wouldn't be here today. We wouldn't have had this whole round of motions and litigation. Instead, what did they do? They, after waiting nine days, they sent a first-class letter copy of the decision to the alien, but not to the attorney. For those reasons, we think the Board had a duty to do more. And under Dalip Singh, the Court recently found that in these cases where a notice went astray, even I suppose there's a question of whether it was even sent out from the Board, but there are, of course, many reasons where it could go astray. The post office could have dropped the ball. It could have been misdelivered to a different office in the same building and never gotten to counsel. And we don't have to go to that justification. No, we don't. Because we have a presumption here that has been rebutted according to your argument. That's our argument. And they didn't consider it. If they had considered it, we'd have been in a different world, but they didn't look at it. Yeah. What happens now up the string of the chain of events now as a result of this? Well, what happens then is he — Let's assume you're right. The Board gets back, says you're right, didn't get the mail. Now what — how does it go from there? Well, what happens — you're asking me what factually did counsel do in the case? No. What's the next step if you were right? If I'm right? Yeah. Yeah. If I'm right, what would have happened would have been that counsel would have filed a timely — No. What happens if we agree with you and remand to the Board? Oh, I see. I'm sorry. Sorry. I'm sorry. We're trying to figure out our job here. Yeah. I'll — yeah. We'll work that out. We're just passive here. We just — Well, if we remanded to the Board in light of Dalip Singh, the Board would have to consider and — Let's assume they do. They find that there should be a tolling. That there should be a tolling? Yes. Then that would — in my view, what that would mean is that the motions to reopen would be timely and not denied. He had moved to reopen to have his adjustment application considered based on his — Based on his marriage.  Okay. And so that would be a typical kind of motion, a common practice to do that, even after a decision is issued, if you can get it in the door in time. So the motion to reopen — Then they would — they would remand it back to the IJA for a hearing on the adjustment application. Unfortunately, the appeal to us was untimely because of this chain of events. That's right. And your time bar, I mean, it's just jurisdictional. There's no way around that. It's the board that has the ability with the flexibility with equitable tolling principles to say, oh, he didn't get it, and so we're going to toll these principles. They could do that, whereas this Court doesn't have the power to do that. We don't have the power to remand to the board? No, no, no. To — On the initial appeal filing, it has to be with — It was late. It was late. Yes. And the statute clearly says, not served within 30 days, it says 30 days of the date of the decision. Yes. So end of story. You know, here's the date of the decision. Nobody even has to say, well, it was mailed. It wasn't mailed. Who got it? They didn't get it. Somebody dropped the ball. It's irrelevant. There was no appeal in 30 days. But for motions to reopen, the board can apply tolling principles, can look at questions of notice, service, those kinds of things. Right now, before us, it's your appeal from the — or your petition from the denial of the motion to reopen, right? That's right. And we do have jurisdiction over that? Yes, you do. Right. Yeah. The other thing that I think needs to be addressed is the frivolous application finding, which is not directly before this Court, but the government has brought it before the Court, arguing there's no prejudice because he would lose the adjustment application anyway, so just save a lot of time. My next question. We have to reach that issue, don't we? I think so, because they raised it here. And it seems to me there's a — there's a — I tossed this around quite a bit last night trying to think about the best way to approach it. It seems to me that the key thing is that under the frivolous application bar of the statute, the statute says the applicant has to be tolled at the time of filing the application of the frivolous application bar. He filed right around April 1 of 97 when the bar took effect. It's a little unclear when it was actually received at the service. We can't rely on that according to what I see in the record. We don't. The filing date. Sure. But the — here's the key thing. The key thing is that the application does not include the warning notice of the consequences of a frivolous finding. It was too early in the process. They hadn't revised their form. It now includes that. If you look at forms that are — that are filled out subsequently, it includes that notice. So he didn't get the notice. So he's got sort of like a catch-22 on this one? In other words, he couldn't have done anything right because he didn't get notice and he was right on the borderline where it would apply or not apply. Is that what you're saying? If he fell before the date, then he wouldn't have to worry about it. He wouldn't have to worry about it at all. I mean, we can't determine that. And he didn't get notice. He didn't have a realization that when he was filing, he may not be properly filing his petition. Is that what you're trying to say? As a statutory requirement, the frivolous application bar on further relief only applies if the person was told at the time of filing the application that there was this problem, this issue. He wasn't told that, so the bar doesn't apply. So the narrowest ruling the Court could make would be the bar doesn't apply because he wasn't told at the time of filing. So motions to reopen, the board couldn't rely on the bar as a way of saying you haven't made out your prima facie claim to relief. Alternatively, this Court could say the board has issued a new decision, matter of Y.L., that specifically deals with many of the concerns, particularly the Second Circuit, about the frivolous application bar and says the immigration judge must make a specific finding of a knowing and intentional fabrication of a material fact. Now, that's where I got off, and tell me if I'm right. Because the BIA did not adopt the I.J.'s findings on frivolousness and they made their own cryptic finding, we were reviewing that decision on it. That's right. And so the finding that would be required under Y.L. isn't there. You just have a conclusion. We adopt the conclusion, but not so they dump the specific findings, which I don't think we're adequate to start with, but they dump the specific findings in favor of a generic, we adopt the conclusion. Well, what the BIA says, we do not rely on the immigration judge's specific reasoning in the portion of the decision addressing the issue of frivolous claim, but on the ultimate conclusion that Respondent, excuse me, fabricated his claim. Now, the only way that they could come up with that is that the paragraph above, they talked about how he contradicted himself and it all. So they seem to be tying this conclusion, fabricated his claim, to the prior paragraph, which talks about we adopt the immigration's adverse credibility findings. Yeah. Now, is that sufficient? I don't think so. If you look at the recent Second Circuit case that I put on the 28J letter the other day, they are quite specific, and I think this Court should follow that reasoning. There has to be a very specific, detailed finding of knowing and intentional misrepresentation of a material fact, and the person has to be clearly given, informed. The Second Circuit actually thinks the Y.L. requires the judge to inform the person, listen, I'm thinking about giving them a frivolous application finding in this case. So you're thinking that the inconsistent And I don't think any of that was there. Inconsistent testimony doesn't necessarily relate to fabrication. That's clear, right. The Y.L. makes that point clear, the B.I. itself, as does the Second Circuit decision. Because that first paragraph of the B.I.A. is the only thing it references. Could that's inconsistent testimony versus intentional? Right. Right. Exactly. That's your argument? Yes, exactly. I'm finished, unless you have something else. Thank you, counsel. Thank you very much. May it please the Court. My name is Ernesto Molina with the Office of Immigration Litigation, and I represent the Respondent, Michael B. McKaysee, in this case. This case involves an alien who argues that the Board erred in finding that it issued its decision on December 23rd, 2003, a finding that this Court itself made in case number 04-70507, which is Mr. Singh's first petition for review. Well, the problem is that Dalip Singh came down and makes it quite clear that the circumstances that are presented here call upon the Board to make a specific response to the twin affidavits, which they didn't do. Of course, the question hadn't been entered then, and it hadn't been entered at the time, actually, at the time the motions panel addressed the petition for review. So why shouldn't this go back to the Board just as it did in Dalip Singh? Well, because Dalip Singh doesn't apply to this case, and I'll explain that real briefly. Dalip Singh involved a case where the Board sent out a decision, the alien claims never got notice. No, that's not what the Board found. I'm sorry? The Board sent it out, sent it out and then claimed that, and the petitioner said, I didn't get it, and the petitioner's lawyer said, I didn't get it. And the Board relied on the date stamp and said, too bad. That's right. They didn't get it. And we said, that's not enough. When you have both the claim, then the Board has to address why those two affidavits aren't sufficient to rebut the presumption of mailing. In actuality, Your Honor, you're missing a large step in that summary. Am I? Okay. Tell me where I left it off. It's this. In Dalip Singh, the alien filed a motion to reissue the decision, which is then considered a motion reopened by the Board. And this Court said that the Board failed to address the specific affidavits of that case. They filed a motion to reopen in this case. And remanded. I'm sorry. What's that, Your Honor? And they filed a motion to reopen in this case, too, didn't they? Well, yes, Your Honor, but we'll get there shortly. I hope so. So this Court in Dalip Singh said the Board did not address the evidence on the motion reopened, and therefore it sends it back. The Board gave some discussion, some information, but the finding of that was that the Board didn't address the affidavits that were submitted as part of the motion to reopen. Here, the Board did address the arguments that were presented. The Board identified that Mr. Singh claimed that he didn't get it. The Board addressed each and every one of Mr. Singh's points, such as the subsequent mailing of the notice on or about January 20th, why the Board may or may not have had the file. The Board addressed every point, which means that the important part of Dalip Singh What are you reading from? Maybe I read the wrong thing. What are you reciting those findings of the Board from? I'm sorry. They're from both the Board's decision on August 18th, 2004, and the Board's December 7th, 2004 decision. December 14th? December 7th, Your Honor. Did you say the first one was August 18th? August 18th, where the Board said the record shows that we mailed it. And identified the file. Well, based on the circumstantial evidence of the cover letter, Your Honor. Okay. That's what they said in Dalip Singh, too. Well, the problem is that in Dalip Singh, the Board, the claim was that the Board never addressed why that statement should prevail as opposed to That's what they relied on, I said. I'm sorry, Your Honor? That's what they relied on. Yes, Your Honor, but The date stamp on the transmittal letter. That's what they relied on. That's That's what they relied on here. Well, they relied on more than that here, Your Honor. There was actually On August 18th? Well, no. In the August – there are two – there are two Talk about August 18th. Sure, Your Honor. I just said what they said in August 18, 2004, is what they said in Dalip Singh. Yes, Your Honor. Okay. Thank you. Now you're moving to December 7th. Correct, Your Honor. And this is on the – on motion to reconsideration where Mr. Singh complained that the Board didn't address his arguments and his evidence, and the Board then gave a more detailed account explaining, yes, according to its transmittal letter, it sent it – it sent the decision to the alien's attorney. According to the Board's records, it then sent a person to its practice, sent the record back to the immigration judge. It categorized – it dated when the immigration judge received that. It then gave a further explanation that on January 2nd, Mr. Singh submitted a notice of change of address, and that the Board received that on January 6th, but that the Board had then informed him on January 20th by letter that it had previously sent the decision to his attorney. And the notice on page 46, the – It didn't discuss what the petitioner said, what his lawyer said, or what the – either one. When they both denied they had received it. That's correct. Nothing in here that considers that. Well, the issue is, Your Honor, did the Board mail it, not did the aliens receive it. Now, whether or not they received it is circumstantial evidence, possibly, that it wasn't mailed. But – Well, that's right, because there's a presumption from the cover letter, which they recited two times, but then the presumption can be rebutted, and there's two declarations that were not discussed at all by the Board at any respect. Your Honor, the August 18th decision identifies that, yes, the counsel claims that he did not get the mailing. I mean, there's not much more to the declaration than that, Your Honor. Well, there's a little more than that, because the petitioner says, I received it late, I called my counsel, he indicated, and he faxed it over to him. So that's another corroboration factor that they didn't consider at all. Well, that's why we go to – when we go to the August or the December 7th decision, the Board further addresses that. All they said is that they sent the letter to the petitioner after they received his notice of change of address. They did nothing more than send him a note and say, here's a copy, a courtesy copy. But they did not discuss the fact that when the petitioner said, whoops, look what happened, I called my counsel. They didn't discuss that to consider that circumstantial evidence relative to the presumption. Well, Your Honor, insofar as the attorney of record to whom the Board mailed the decision had indicated that he did not receive it, it's clear in the record at page 37 that the Board counsel didn't – Have you read Gallup's thing? Yes, I have, Your Honor. Did you read what we said in there? Yes, I did, Your Honor. Did you read what we asked the Board to tell us? Yes. Where have they told us that in this proceeding? They didn't have the benefit of Gallup's thing at the time. That is true, Your Honor. What they did was, as you say, they looked at their side of the equation. They've never told us in this case what the effect of the affidavits are. But in Gallup's thing, Your Honor, the problem was that the Board didn't discuss the evidence. No, it said, had the BIA considered and specifically addressed the effect of Singh's and his counsel's affidavits of non-receipt, it may well have concluded that the presumption of mailing created by the cover letter was rebutted and would have required further evidence of mailing before determining that the decision had indeed been properly mailed. We do not know from the BIA's cursory denial of Singh's motion in its April 28, 2004 decision whether or not it did consider the affidavits or what process it would have followed assuming the affidavits were sufficient to rebut the presumption of mailing. Without the benefit of the BIA's articulated reasoning on these issues, we declined to decide in the first instance the weight and consequences of Singh's and his counsel's sworn affidavits of non-receipt and remand to the BIA to do so. What you are asking us to do is to take this case as the vehicle to answer the question we left open in Gallup-Singh, which is, okay, if this is the Board's response, is it going to be sufficient from this Court's view of due process? Is that what you want us to do here? Your Honor, in this case, the Board has to or the Court needs to analyze the Board's factual determination. That's right, we do. And we don't know what weight they gave to the affidavits. If they don't give any weight to the affidavits, we then have to decide whether or not that meets the burdens of due process. But the difficulty, Your Honor, is the Board did consider those. That's your take on it. It was our decision. Believe me, this decision was carefully written to give the Board the opportunity to explain to us what the process is and what it does and how it lets people know and what they can do to find out whether a decision has been mailed. We remanded to the Board to give them that opportunity. You want to pretermit it here and make this case the vehicle for saying what they did in this case is enough. Do you really want that? No, Your Honor. The Court or the Attorney General? Your client wants that. No, Your Honor. The Attorney General always prefers that he... I bet not only the Attorney General but the Secretary of DHS. That's your client. Well, actually, no, Your Honor. My client is the Attorney General of the United States, who is the proper Respondent in this case. The Board of Immigration Appeals is under the Attorney General of the United States, not the Department of Homeland Security. I understand that. But DHS is the one that wants to have this person deported. You are correct, Your Honor. I do know that. Now, I see that I have run out of time. Mm-hmm. Now, at that point, I imagine I'll stop unless the Court has any further questions. Thank you, counsel. Thank you, Your Honor. And I imagine I'll bypass on the summary, since I'm having a hard time remembering what we actually discussed shortly. But, again, the Court urges that the Board should be affirmed, but if necessary, under Dollop-Singh. Remand to the Board for further discussion. Thank you, counsel. Case just argued will be submitted. Next case on the calendar is Murray v. Alaska. Thank you.
judges: Reinhardt, Brunetti, Fisher